No. 28,361.

JOSEPH H. ROST, *Appellant* and *Appellee*, v. ELIZABETH HEYKA, MARY KERSTINE, ROSA RIZEK and ANNA TARKOWSKE, *Appellees* and *Appellants*, and FRANK W. ROST, *Appellant* and *Appellee*.

(285 Pac. 539.)

Opinion filed March 9, 1930.

*W. D. Vance, Ralph M. Hope, N. J. Ward,* all of Belleville, and *F. J. Rost,* of Topeka, for the appellants and cross appellees.

*W. C. Perry,* of Belleville, and *Clyde L. Short,* of Concordia, for the appellees and cross appellants.

The opinion of the court was delivered by

BURCH, J.: The action was one by the son and heir of Frank Rost against his brother and sisters, as coheirs, to partition real estate, a subject concerning which there was no dispute. A second cause of action sought to charge three of the coheirs with sums of money received from their father, to be deducted from their interests in the real estate. These heirs, as a counterirritant, sought to charge plaintiff, and his brother who sided with plaintiff, with advancements to them. One of the heirs who had received nothing championed both groups. The court left all parties in the situation in which it found them, and they all appeal.

Frank Rost died intestate on January 5, 1926, leaving real and personal property. His heirs were his children, Joseph H. Rost, the plaintiff, and the defendants, Frank W. Rost, Elizabeth Heyka, Mary Kerstine, Rosa Rizek and Anna Tarkowske. Previous to

1922 Frank Rost deeded real estate to each of his sons. In December, 1922, Frank Rost suffered a brain hemorrhage, causing partial paralysis. In March, 1923, he had another stroke, but he continued to look after his affairs until in December, 1925, when the illness occurred which shortly resulted in his death. After the first stroke, he gave $1,000 to each of his daughters, Elizabeth, Mary and Rosa. There was evidence he said he would give Anna $1,000, but she would have to ask for it, which she did not do. While, as indicated, the defendant Frank Rost is aligned with plaintiff, and Anna Tarkowske is aligned partly with plaintiff, the terms plaintiff and defendants may be used for convenience to designate the opposing parties.

The principal issues are indicated and were determined by findings of fact which, as corrected by the district court, read as follows:

"That Frank Rost, Sr., was not insane or feebleminded, but was mentally capable of transacting his business up to the time of his death, and did do so; that he knew his children and their claims upon him and his claims upon them, and knew the amount, value and location of his property; that he had no insane delusions, but on the contrary had remarkably clear conception of his children's conduct, feelings and actions toward him; that the defendants Elizabeth Heyka, Mary Kerstine and Rosa Rizek, and their respective husbands, did not enter into a conspiracy for any purpose whatever, as charged by plaintiff and defendants Frank W. Rost and Anna Tarkowske; that the farms deeded to the sons and the money and personal property given to each daughter on the occasion of their marriage, was a gift, was of comparatively equal value, and should not be charged against any of the parties as an advancement; that the $435 loaned to plaintiff at the time of his business ventures in Missouri and Nebraska was repaid, and there is nothing due from him thereon; that the payment of $1,000 each to Elizabeth Heyka, Mary Kerstine and Rosa Rizek was a gift to them, and should not be charged as an advancement; that the payment of $1,000 to Frank Heyka was not intended as a gift to Elizabeth Heyka; that all moneys or property received by any of the defendants from Frank Rost, Sr., during his lifetime was duly accounted for, and that there is nothing due to the estate of Frank Rost, Sr., from any of them, and that all money and property in the possession of Frank Rost, Sr., at the time of his death was duly accounted for; that the $6,000 of gold which was buried in the chicken house was unlawfully and illegally taken by all the children, but was divided equally between them, and there is nothing due at this time from any of them on that account."

Physicians who treated Rost in his lifetime, called as witnesses by plaintiff, were not permitted to give professional opinions regarding Rost's mental condition and capacity to transact business. The evidence was rejected pursuant to the statute, which reads as follows:

"The following persons shall be incompetent to testify:

. . . . . . . . . . . . . . . .

"*Sixth.* A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, defect, or injury, or the time, manner or circumstances under which the ailment was incurred, or concerning any knowledge obtained by a personal examination of any such patient, without the consent of the patient." (R. S. 60-2805.)

The contention is defendants waived their privilege, as heirs, to insist on the privilege their father would have had if living. The supposed waiver resulted from the taking of Doctor Mullikin's deposition. The deposition was admitted by the court for the single purpose of determining the question of waiver, and after examining the deposition the court announced it did not waive the privilege at all.

When Rost was stricken in December, 1922, Doctor Mullikin was called into consultation with Doctor Thomas, who was in charge of the case. About a year later, Rost called at Doctor Mullikin's office to pay his doctor bill. On that occasion Doctor Mullikin did not talk to Rost in any relation of physician and patient, and the doctor testified that from his observation, made at the time, Rost was perfectly capable of transacting business. As a means of introducing the incident, Doctor Mullikin was asked what Rost seemed to be suffering from when he was called in consultation. The answer was that Rost seemed to be suffering from a stroke of paralysis, a fact which nobody disputed, and which was not an issue in the case. Plaintiff then cross-examined Doctor Mullikin fully with respect to the disaster to mental faculties wrought by hemorrhage of the brain resulting in paralysis. To that extent the deposition was one taken by plaintiff. On redirect examination Doctor Mullikin said that a stroke of paralysis is not conclusive that mental faculties are impaired, and said that after talking with Rost in his office, the doctor could not say whether the stroke had affected Rost's mental faculties. Neither statement transgressed the statute, and the district court was correct in holding there had been no waiver.

Plaintiff contends he is the person who could insist on the privilege or waive it, because defendants were not claiming as heirs, but as donees of their father. The contention is unsound. Plaintiff brought his sisters into court to cut down their shares in the

land to be partitioned, and they were defending their inheritance from their father.

Besides what has been said it is highly probable that, in view of the evidence of business actually transacted, intelligently and competently, which justified the court's findings, doctors might have given expert opinions that Rost was totally demented and incapable of transacting business until the lowing herd came winding o'er the lea, without changing the court's mind.

At the hearing on the motion for new trial the affidavit of Anna Tarkowske was presented, stating what she said she would have testified to had the court permitted. The trouble with the affidavit was that she did testify in substance to all the material things presented by the affidavit. She testified that Heyka sat by Rost and told Rost his boys were going to bring a man and take his money; that Mary Kerstine told her father that Joe Rost wanted to take his money and was going to take his money; that Heyka and Mrs. Heyka talked to Rost about some one trying to take his money; that Rost at these times became excited, angry, and mad, and that he spoke of Joe Rost as a thief. Affiant also testified at the trial that Joe Rost wanted to borrow money from his father, that Mary Kerstine made a fuss about it, and that Heyka said he would borrow the money. There is nothing else of importance in the affidavit, and there was no occasion for filing it. This family feud was fully investigated, and other assignments of error relating to rulings on evidence would not be sufficient to require a new trial, if well founded.

Topics in plaintiff's brief—the gifts were void, presumptively money received was an advancement, accounting, conspiracy, and insane delusions—are argued as though this court were trying the case. It is a typical fact case. The findings of fact were sustained by abundant evidence, and there is no merit in either appeal.

The judgment of the district court is affirmed.